381 P.2d 440

Bernard C. BRADSHAW and Mickey Bradshaw, husband and wife, et al., Plaintiffs-Appellants,

v.

MILNER LOW LIFT IRRIGATION DISTRICT, a quasi-municipal corporation, et al., Defendants-Respondents.

No. 9106.

Supreme Court of Idaho.

May 3, 1963.

Rehearing Denied May 29, 1963.

530

Lowe & Lowe, Burley, Ralph R. Breshears, Boise, for appellant.

Parry, Robertson & Daly, Twin Falls, Nielson & Nielson, Burley, for respondent.

TAYLOR, Justice.

The defendant (respondent) Milner Low Lift Irrigation District was organized in 1921. At that time it acquired by purchase the water rights and the incomplete diversion and distribution system of the Murtaugh Canal Company. The purchase price

ultimately agreed upon was $486,864 to be paid in bonds of the district. At that time there were 8114.4 acres of land within the district. The purchase price was calculated upon a basis of $60 per acre, which was determined, and decreed, to be the amount of benefits accruing to each acre, and to be the basis for the fixing of annual assessments. During the years between its organization and 1952 the district acquired additional water rights, and certain lands were excluded and other lands were added by fourteen separate annexations, so that the total acreage within the district in 1952, prior to the annexation involved herein, had been increased to 9468 acres.

The acres added by these previous annexations were assessed for benefits on the basis of their proportionate share of the original indebtedness of the district remaining unpaid at the date of their respective annexations, and after annexation the added lands shared in the distribution of water belonging to the district, and in the payment of debts and maintenance and operation expenses, equally with all other lands within the district.

Some two years prior to 1952, various proposals were made and discussed among water users of the district for the irrigation of lands lying outside of, and adjacent to, the boundaries of the district. These proposals were made by owners of lands within the district who also owned a major portion of the lands proposed to be annexed. Some

of these owners were also officers and directors of the district. The acreage to be annexed was increased in each succeeding proposal so that the final proposal, which was consummated on October 23, 1952, resulted in the annexation of 4000 acres of new land.

It was understood by all concerned that the existing water rights owned by the district were insufficient for the irrigation of more than a fraction of the proposed additional land. This is apparent from the terms of the petition for annexation.

During that period the construction of the Palisades dam and reservoir on the Snake river, by the Federal Bureau of Reclamation, was authorized. The promoters of the proposed annexation understood that the Palisades project was planned and was to be developed as a source of water supplemental to the water available to existing irrigation systems, and was not intended primarily for the development of new projects. Hence, annexation to an existing district would facilitate the acquisition of additional water from the Palisades storage for the irrigation of the lands to be annexed.

June 8, 1950, at a meeting of the landowners of the district, a committee was appointed to act with the chairman of the board and secretary of the district in making a study of the proposed extension of the district. All of the five members of this

committee, as well as the chairman of the board and secretary of the district, were owners of lands proposed to be annexed to the district, and the lands of all, except one, were ultimately annexed.

Water for the irrigation of the lands of the district as it existed prior to the annexation involved was taken from the Snake river by means of a pumping plant located on the forebay above the Milner dam. The water was pumped to an elevation above the river from which it was distributed by means of canals, laterals and subsidiary pumping stations to the lands of the district. The average lift was 77 feet. The irrigation of the lands proposed to be annexed required the enlargement of the existing pumping plant and main canal, the construction of additional laterals, and the pumping of the water for such lands to an average elevation of 150 feet.

The lands in the district as it existed prior to the annexation of 1952 are referred to as the "old lands", and the lands annexed in 1952 are referred to as "new lands".

At a landowners' meeting held January 22, 1952, the committee appointed to study the proposed extension of the district made a report of its findings as to feasibility and conditions of such extension. The following appears in the minutes of the meeting:

"The subject of a 4,000 acre extension to the Milner Low Lift Irrigation District was presented to the landown-ers by Charles L. Fisher, Chairman of the extension Committee. Mr. Fisher stated that after considerable study, the Committee members believe that $100.-00 per acre is a very fair price for the entrance fee, which includes all construction and additional power cost for lifting water to a higher level. The purchase of storage water for the extension being in addition to the $100.00 per acre entrance fee, because the Milner Low Lift Irrigation District will have 40 years to pay for the same, without interest. Thereby making the annual storage water payment out of the Bond Levy.

"In addition to the extension paying for all new construction and additional power costs, it will pay for its own storage water and help pay for the construction and water-rights on the present 9,468 acre project.

"A 4,000 acre extension to the Milner Low Lift Irrigation District was unanimously approved by each person standing and expressing his opinion."

At a meeting of the board of directors of the district, held August 5, 1952, a petition was filed with the board requesting annexation of the 4000 acres before referred to. The petition was signed by the owners of approximately 3425 acres of the 4000 acres proposed to be annexed. The petition contains the following agreement:

"That we, the undersigned, do hereby covenant and agree to pay to the said Milner Low Lift Irrigation District, at such time as the same may be assessed against the said land by the said District, the sum of $100.00 per acre for the purpose of equaling the amount we would have been required to pay such District had the land been included in such District at the time the same was originally formed and the additional increased cost of putting water on the land. If such sum be not sufficient to pay such increased cost, then we do hereby authorize and direct the Board of Directors to make such additional assessment or assessments as shall be sufficient to pay the cost of putting the water on the land.

"This petition is presented with the expressed understanding and agreement that water is not now available for more than the following described real estate, towit: [approximately 800 acres described] and that water cannot be placed upon the real estate last above described until an additional pumping unit has been installed and necessary laterals constructed.

"That water is not now available and will not be available for the following described real estate, to-wit: [approximately 3200 acres described] until the Palisades Reservoir is constructed and in operation, and if the land last above described be annexed to the District, no demand will be made upon the District for water for the irrigation thereof until water is available therefor and the necessary pump or pumps and other diversion equipment have been installed and placed in operation, and the necessary canals and laterals constructed."

September 2, 1952, following publication of the petition, written objection and showing in opposition to the proposed annexation was filed with the board by one of the "old land" owners. September 5, 1952, at a regular meeting of the board, a resolution was adopted, declaring that the directors deemed it to be for the best interests of the district to include therein the lands described in the petition (I.C. § 43–1007). The conditions of annexation set forth in the resolution follow closely those set forth in the petition as to the 800 acres. As to the 3200 acres the conditions were stated as follows:

"Section 3: That the following described real estate shall be annexed to the said District on the expressed condition that water is not now available and will not be available for the irrigation thereof until the Palisades Reservoir has been constructed and is in operation and the necessary pump or pumps and other diversion equipment have been installed and placed in opera-

tion and necessary canals and laterals constructed, and that no demand will be made upon the District for water for the irrigation of the same, or any part thereof, until water is available from the Palisades reservoir and the necessary diversion works and laterals have been constructed * * *."

As to all lands, the resolution concludes:

"Section 4: That all of the above described land shall be annexed to the Milner Low Lift Irrigation District on the expressed condition that each and every landowner, or their grantees, shall severally pay to the Milner Low Lift Irrigation District the sum of One Hundred ($100.00) per acre, or such sum in excess thereof as shall be necessary to procure and place water upon land so annexed. The said sum of $100.00 per acre, or any sum in excess thereof, shall be levied and assessed against the said land by the Board of Directors in one assessment, or in assessments from time to time as the Board of Directors shall deem right under the circumstances, and such assessment shall be paid by the landowner or his grantee before and as a condition precedent to the said land becoming entitled to receive any water, unless the Board of Directors of said District shall otherwise direct."

Pursuant to a further resolution of the board, adopted at the same time, an election was held October 7, 1952, on the issue of annexation. October 10, 1952, upon a canvass of the returns of the election, the board determined and declared that the proposal to change the boundaries of the district to include the 4000 acres was carried by a vote of 58 for, and 34 against, the annexation. At a special meeting of the board, held October 23, 1952, an order was adopted changing the boundaries of the district to include the lands described in the petition and resolution for annexation. The order contained the same conditions set forth in the petition, as modified by the resolution, as hereinabove set out.

Prior to the annexation and particularly between January and October, 1952, several meetings of the landowners were held in the district to consider the annexation proposal. Also, some of the members of the extension committee and the chairman of the board and secretary of the district visited landowners of the district in their homes. At these landowners' meetings and visits in the homes of landowners, the committee members and the officers of the district sought to allay the fears, widely held and expressed among the landowners, that their water rights would be jeopardized, and that they would be subjected to additional financial burdens by the annexation proposed. To overcome such fears and

to secure a favorable vote on the annexation proposal, the committee members and officers mentioned assured the landowners that if they would vote in favor of the annexation, and the proposal carried, their existing water rights would not be jeopardized; that they would not be required to assume any additional financial burden; and that the owners of the new lands would pay any additional costs involved, including the costs of expanding and extending existing facilities, the cost of acquiring necessary additional water, and 'the additional costs for power to raise water to the level of the new lands. Some of the old landowners testified at the trial that in voting in favor of annexation they relied upon the assurance thus given them.

A short time prior to the annexation, the district began negotiations for the purchase of a storage water right in the American Falls reservoir. The contract for the purchase was executed in 1953. By its terms the district acquired 11,574 acre feet of water from the American Falls reservoir at a cost of $18,999.50. This low cost was the result of a credit allowed by the bureau of reclamation for rentals paid by the district for 15,000 acre feet of water leased from that source during the years from 1936. The 11,574 acre feet purchased was a replacement for the water theretofore leased. By the same contract the district also acquired 27,500 acre feet of storage right in the Palisades reservoir at a cost of $7.75 per acre foot, and the district has been allotted an additional 17,000 acre feet of storage water from the Palisades reservoir at the same cost per acre foot. This the district has not yet contracted for.

Mr. Lynn Crandall, Snake river watermaster for district 36, which embraced all of the watershed involved in these proceedings, qualified as an expert on the duty and availability of water, and testified that to irrigate adequately all of the annexed lands, the district would require a total of 55,000 acre feet of water from the Palisades reservoir, 10,500 acre feet of which were, and are, not available.

Following the execution of the contract for storage water rights, the district leased only 3332 acre feet from the American Falls reservoir. In 1957 only 1822 acre feet were available for lease by the district from that source. No water was leased in 1958. In 1958 the Palisades project was completed and placed in operation. In 1954 water was delivered to 2259 acres of the new lands. In 1955, 1956, 1957 and 1958 water was delivered to 2359 acres of the new lands.

Following the annexation and on June 2, 1953, by resolution of the board of directors the annexation fee chargeable to the new lands was increased to $125 per acre. From 1954 to 1958 water available to, and received by, the district was distributed pro rata and equally to all irrigated lands within the district, including the 2359 acres of

the new lands. 1628 acres of the new lands had never been irrigated at the time of trial. At all times during the existence of the district, prior to the year 1958, all charges for maintenance and operation were spread equally over all lands receiving water for irrigation.

At the date of annexation, there remained unpaid of the old bonded indebtedness of the district the sum of $194,000. During the years 1954, 1955, 1956 and 1957, the owners of new lands were assessed and paid toward the retirement of this original indebtedness the total sum of $6654. No assessment was made after 1957 against any of the new lands for the retirement of the old indebtedness.

The board of directors advised the owners of new lands that their right to receive water, after payment of the annexation fee, was subject, and inferior, to the rights of the owners of the old lands.

By resolution of the board of directors at its meeting on September 3, 1957, the assessment levied for the maintenance and operation of the district, for the 1957–58 fiscal year, was made upon the old lands at the rate of $7.24 per acre, and on the new lands at $9.50 per acre. The levies for payments due on the old bonded debt of the district, and for the purchase of 11,574 acre feet of American Falls reservoir storage water, were made upon the old lands of the district only. These levies were protested by certain owners of new lands.

This action was commenced by certain owners of new lands against the district and the owners of the old lands, to have the claimed right of the owners of new lands to share in all water rights owned by the district equally with all other landowners within the district, without regard to the date of their annexation to the district, or the date of the water rights.

There were 20 owners of new lands who refused to join as parties plaintiff and who were joined as defendants, as provided by I.C. §§ 5–313, 5–316. (See I.R.C.P. Rule 19(a) now in effect.) These defendants held title to approximately 1400 acres of the new lands.

The cause was tried to the court without a jury.

The trial court found that all of the water rights acquired by the district, except the Palisades storage water, had been made appurtenant to, and beneficially used upon, and had reclaimed, land in the district prior to the annexation made in October, 1952.

The court also found:

"That a majority of the owners of the old lands, relying upon the information given and representations made in the meetings and home visits above

referred to, and upon the agreements contained in the annexation petition, were prevailed upon to vote in favor of the annexation of the new lands; that the information and representations above referred to were made to the owners of the old lands either on behalf of the owners of the new lands or with their knowledge and consent and without objection on their part; that a majority of the owners of the old lands would not have voted in favor of the annexation if such information, representations and agreements had not been given and made to them, as the owners of the new lands and the Board of Directors of the District knew; that the owners of the old lands voted at the election as they did only because of such information, representations and agreements; that the proposal to annex the 'new lands' would have been defeated at the election except for such information, representations and agreements." Finding XX.

"That the sum of $125.00 per acre is insufficient to pay (1) the cost of construction and equipment necessary to deliver water to the new lands; (2) the added power costs necessary to deliver water to the new lands; and (3) the cost of acquiring the rights to water for the irrigation of such new lands; that in order to furnish water from the facilities of the District to the new lands, it would be necessary for the District to expend funds over and above the amount per acre that the District is required to spend in placing water on the old lands; there is nothing in said resolution, or in the petition for annexation or in any understanding or agreement at any water users' meeting or meetings or otherwise, which precludes the Board of Directors from making assessments in addition to the $125.00 per acre if the cost of construction and equipment necessary to deliver water to the annexed lands and the cost of acquiring the rights to water for the irrigation of the annexed lands should exceed $125.00. The petition for annexation and the resolution of September 5, 1952, calling for the election, specifically provide for the making of such additional assessments. The majority of the members of the Board of Directors understood, at the time of the adoption of the June 2, 1953, resolution above referred to, that the Board of Directors could make such additional assessments upon the new lands as are necessary to pay such costs when they are finally determined and this was also the general understanding of the owners of new and old lands. The final cost of extending the system of the District is not yet known." Finding XXIII.

"Experience in the operation of the District since the annexation in 1952 has shown that there is and will be a difference in the cost of delivery of water to the new lands and that of the old lands. Experience was necessary to determine the extent of this difference in cost. In 1957 after the District had the advantage of some experience of the delivery of water to the new lands it was determined that the difference in the cost of this delivery, allowing credits for any benefit to the District as it existed prior to 1952, was $2.26 per acre and that difference was reflected in the assessment made for operation and maintenance for the year 1958. For the years 1959 and 1960 the difference in assessment was $2.46." Finding XXVI.

"That the water delivered * * * [to new lands during 1953 through 1958] was not pursuant to any water right which has been made appurtenant to the new lands pursuant to the annexation proceedings of 1952; and that said water was made available only on a year-to-year basis until a permanent supply would be available from Palisades Reservoir; and that such water was not delivered to such lands by the District to be beneficially used with the ultimate purpose of creating a permanent right in said lands to demand such water as an appurtenance to the new lands; that there is not now appurtenant to the new lands any permanent water right, and there will not be any such right available during the year 1958, and the District will never be able to secure, from the waters to be stored in the Palisades Reservoir, a full or adequate water right for the new lands; that for the year 1955, the District was compelled to lease additional water other than the water received pursuant to the water rights * * * [held by the district] to be used on the lands in the District; that during the years 1954, 1956 and 1957, because of the above-normal flow of Snake River, it was not necessary for the District to acquire water other than that received under the aforementioned water rights, but in any normal water year, those water rights will not be sufficient to furnish water to the lands in the District." Finding XXVII.

"That based upon historical use, the duty of water in the Milner Low Lift Irrigation District is 5.8 acre feet per acre diverted at Snake River of which approximately 75% is delivered to the land. Assuming Palisades Reservoir was in operation during the historical period from 1920 to 1958, and assuming the District was comprised of 13,468 acres (old lands and new lands) there would be 15 years during this period

when less than 5.8 acre feet would be available for diversion and 11 years when less than 5 acre feet would be available with critical shortages occurring during the 1930–34 period. If the figure 5.2 acre feet was used, which is the amount that has been diverted during the past few years, there would be 13 years during this period when less than 5.2 acre feet would be available and 11 years when less than 5 acre feet would be available with the same critical shortages occurring during the 1930–1934 period." Finding XXVIII.

"That the present water supply of the District is not sufficient to adequately irrigate both the old and the new lands; that if water is delivered on an equal basis to both the old and the new lands in the future the water rights appurtenant to the old lands prior to the annexation of the new lands will be diminished and jeopardized; that to provide an adequate water supply for the new lands, it will be necessary for the District to purchase sufficient storage space in Palisades Reservoir to provide at least 5 acre feet of water per acre; that Palisades Reservoir is the only source of available water, of which the space is only ⅓ firm; and that it would be necessary for the District to acquire at least 60,000 acre feet of storage space to supply adequately water for the 4,000 acres of new lands, and such storage space will cost not less than $7.75 per acre foot of storage capacity, which would be paid by the owners of the new lands; that 60,000 acre feet of storage space in Palisades is not available to the District; that not more than 44,500 acre feet of such storage space is or will be available to the District." Finding XXIX.

(In our consideration of appellant's contention that the trial court erred in finding that the district did not have, and there was not available to it, sufficient water for the irrigation of all of the lands of the district, both old and new, we have determined that the finding of the trial court is supported by the evidence, and particularly on the basis of the testimony of Mr. Crandall, the river watermaster, that a total of 55,000 acre feet of Palisades storage would be necessary for that purpose.)

"That if the Board of Directors cannot make additional assessments on the new lands, the owners of old land will be required to assume added financial burdens for operation and maintenance charges, construction costs, and acquisition of additional water rights and storage, all of which would be contrary to the information, representations and agreements given and made to and with the owners of old lands." Finding XXX.

■ The findings of the trial court are amply supported by the evidence and will not now be disturbed. I.C. § 13–219 and annotations.

From its findings, the court, among other things, concluded:

"It is the duty of the Board of Directors of the Milner Low Lift Irrigation District to classify the lands within the District in accordance with the provisions of Section 42–904 of the Idaho Code and to find and declare the water rights owned by the District, except Palisades Reservoir water, are appurtenant to the lands within the District prior to October, 1952, and the lands within the District prior to 1952 are entitled to a prior right to the use of such waters." Conclusion I.

"The water rights owned by the District, except Palisades Reservoir waters, are appurtenant to the lands within the District as it existed prior to October, 1952, and the District holds title to such waters in trust for the owners of old land. That the unpaid part of the costs of the acquisition and construction of the facilities of the District and for the acquisition of the water rights * * *, exclusive of Palisades storage, and acquired prior to 1952 remain an obligation of the old lands." Conclusion II.

"Any attempt to use the waters now appurtenant to the old lands on new or annexed lands without just compensation to the old land owners would constitute deprivation of property without due process of law." Conclusion III.

"That if and when water is made available from Palisades Reservoir such water shall be appurtenant to the lands annexed to the District in 1952. That the cost of acquiring 27,500 acre feet of storage space in Palisades Reservoir and, if purchased, the cost of acquiring the additional 17,000 acre feet in Palisades Reservoir now allotted but for which no contract has been entered into or approved, would be an obligation to be assumed and paid for by the owners of the new lands. That the cost of 11,574 acre feet of storage space in American Falls Reservoir now under contract, should be an obligation to be assumed and paid for by the owners of the old lands." Conclusion IV.

"Plaintiffs cannot now compel the present Board of Directors of said District to perform contrary to the information, representation, and agreement which were given and made to the old land owners for the purpose of obtaining their favorable vote on the annexation proposal prior to the election in *September*, 1952; and that the

544

Board of Directors is bound by such information, representation and agreements." Conclusion VI.

"It is the duty and obligation of the present Board of Directors to make any assessment or assessments upon the new lands necessary over and above the $125.00 assessment in June, 1953, to complete construction and purchase equipment and pay the cost of the water which will be made available from Palisades Reservoir for use on the annexed lands." Conclusion IX.

"The present Board of Directors are under no obligation to accept assessment fees for land not now irrigated until it is assured that an adequate water supply from Palisades Reservoir or from some other source has been obtained and is available." Conclusion X.

"Priority of appropriation shall give the better right as between those using the water." Constitution, Art. 15, § 3.

"Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental, or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has set-tled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law." Constitution, Art. 15, § 4.

"Whenever more than one person has settled upon, or improved land with the view of receiving water for agricultural purposes, under a sale, rental, or distribution thereof, as in the last preceding section of this article provided, as among such persons, priority in time shall give superiority of right to the use of such water in the numerical order of such settlements or improvements; but whenever the supply of such water shall not be sufficient to meet the demands of all those desiring to use the same, such priority of right shall be subject to such reasonable limitations as to the quantity of water used and times of use as the legislature, having due regard both to such priority of right and the necessities of those subsequent

in time of settlement or improvement, may by law prescribe." Constitution, Art. 15, § 5.

■ These constitutional provisions apply to irrigation districts. The defendant district, having acquired by purchase the rights of the original appropriator and having itself made subsequent appropriations and purchases of water, stands in the position of appropriator for distribution to the landowners within the district, within the meaning of Const., Art. 15, § 1. The district holds title to the water rights in trust for the landowners. The landowners, to whose lands the water has become dedicated by application thereon to a beneficial use, have acquired the status and rights of distributees under Const., Art. 15, §§ 4 and 5. Nampa & Meridian Irr. Dist. v. Barclay, 56 Idaho 13, 47 P.2d 916, 100 A.L.R. 557.

Plaintiffs cite the statement in Yaden v. Gem Irr. Dist., 37 Idaho 300, 307, 216 P. 250, to the effect that these constitutional provisions "have no application to an irrigation district, except as hereinafter noted." The quoted statement was dictum and inconsistent with the conclusion reached in that case. The action was brought by an owner of land lying outside the district, for damages for refusal of the district to deliver water. The plaintiff Yaden had been allowed to use water belonging to the district when it was not needed by the landowners within the district. It was held that the plaintiff could not thus acquire a right to the continuous use of the water as against the district. The basis of the Yaden decision was that the water had become dedicated to a beneficial use on the lands within the district.

In conformity with the foregoing § 5 of Art. 15 of the Constitution, the legislature in 1901 enacted what is now I.C. § 42–904, as follows:

"When any ditch, canal or reservoir delivering or distributing water to several users has one or more rights or priorities by reason of enlargements made from time to time, the right of the land being irrigated by such works shall be divided into classes; rights of the first class belonging to those lands reclaimed between the dates of the first and second priorities or rights of such works; rights of the second class belonging to those lands reclaimed between the dates of the second and third priorities of such works; rights of any other class being determined in like manner; but all the rights belonging to the same class shall be equal and subject alike to the regulations of their respective class." I.C. § 42–904.

In Brose v. Board of Directors, 20 Idaho 281, 118 P. 504, and Brose v. Board of Directors, 24 Idaho 116, 132 P. 799, the

# 546

foregoing statute was applied to an irrigation district.

■ In support of their contention that by the process of annexation they acquired a right to share in existing water rights of the district on the basis of equality with the owners of old lands, the plaintiffs rely upon I.C. § 43–1010, which after requiring the recording of the order changing the boundaries of the district, provides:

"* * * and thereupon the district shall be and remain an irrigation district, as fully and to every intent and purpose, as if the lands which are included in the district by the change of the boundaries as aforesaid, had been included therein at the original organization of the district."

To construe this statute as plaintiffs do, would render it repugnant to the provisions of the constitution above set out.

The owners of the old lands, through and by means of the irrigation district, acquired, and for many years applied to the irrigation of their lands, valuable water rights, which had become appurtenant and dedicated to their lands, and which were held in trust by the district for their use. They could not thereafter, without their consent, be deprived of the use of that water when needed to irrigate their lands. Const. Art. 15, § 4; I.C. §§ 42–101, 42–914. Further, their use of the water for many years prior to the annexation gave them "superiority of right to the use of such water." Const. Art. 15, § 5; Gerber v. Nampa & Meridian Irr. Dist., 16 Idaho 1, 100 P. 80; Gerber v. Nampa & Meridian Irr. Dist., 19 Idaho 765, 116 P. 104; Biddick v. Laramie Valley Municipal Irrigation Dist., 76 Wyo. 67, 299 P.2d 1059.

The fact that owners of lands, annexed between the original organization of the district and 1952, were accorded equality with other landowners therein, in the use of water and in the debts and expenses of the district, is of no consequence here. The original landowners within the district may have consented to such treatment of the comparatively small annexations occurring during those years. No issue is presented in this case as between such owners. Moreover, it is abundantly clear from the record that the owners of lands within the district prior to 1952, did not consent to any sharing or impairment of their existing water rights with the owners of the new lands. Furthermore, the owners of the new lands, by the terms of their petition for admission to the district, specifically disavowed any purpose to claim, or infringe, the existing water rights of owners of the old lands, and that same limitation was carried forward into the order changing the boundaries of the district, and became a condition of that order. See: Nampa & Meridian Irr. Dist. v. Briggs, 27 Idaho 84, 147 P. 75; Knowles v. New Sweden Irr.

Dist., 16 Idaho 217, 101 P. 81; In re Water Rights of Deschutes River & Tributaries, 134 Or. 623, 286 P. 563; Fenton v. Tri-State Land Co., 89 Neb. 479, 131 N.W. 1038.

■ We agree with the conclusion of the trial court that the water acquired or to be acquired from Palisades reservoir storage should be treated as appurtenant to the new lands. It was and is a new right initiated expressly for the benefit of such lands.

■ However, we do not construe the conclusions or judgment of the district court as denying to the owners of the new lands any right or interest whatever in the water rights held by the district prior to their annexation. The irrigation district law regards the irrigation district as a unit, and as a legal entity, holding title to its property and water rights in trust for the uses and purposes set forth in that law. I.C. §§ 43–101, 43–316; Gedney v. Snake River Irr. Dist., 61 Idaho 605, 104 P.2d 909; Yaden v. Gem Irr. Dist., 37 Idaho 300, 216 P. 250; Colburn v. Wilson, 24 Idaho 94, 132 P. 579.

■ It is the apparent purpose of the provisions of I.C. § 43–1010, above quoted, to make the landowners within an irrigation district equal [except as to any disparity which may be found to exist in benefits received (I.C. § 43–404)] so far as may be consistent with priority of water rights as recognized and protected by the provisions of the constitution. Harsin v. Pioneer Irr. Dist., 45 Idaho 369, 263 P. 988. Having regard to such purpose of the statute, and the authority of the legislature in the premises as recognized by the constitutional provisions above quoted, we recognize the right acquired by the owners of new lands, by their inclusion within the district, to the use of any water owned by the district when the use thereof is not required for the proper irrigation of the old lands, and when such use is not in conflict with the rights previously acquired by the owners of the old lands, or when such use is not in derogation or impairment of such prior rights. We find nothing in the conclusions or judgment of the district court in conflict with this right of the owners of new lands and its decree must be construed in harmony therewith.

■ We also agree with the conclusions of the trial court that the owners of the new lands must bear the cost of acquiring water for such lands; of enlarging, equipping and extending the system for the irrigation thereof; and the differential in the cost of maintenance and operation, due to the higher elevation of the new lands, or any other factor necessarily increasing the cost of the irrigation thereof. Brown v. Shupe, 40 Idaho 252, 233 P. 59; City of Nampa v. Nampa & Meridian Irr. Dist., 19 Idaho 779, 115 P. 979. These burdens were assumed by the owners of the

new lands in their petition for annexation, and were made a condition thereof. Moreover, the imposition of such additional costs and burdens upon the owners of the old lands, without their consent, would be an invasion of their constitutionally protected property rights. Const. Art. 1, §§ 13 and 14; Bennett v. Twin Falls, etc., Co., 27 Idaho 643, 150 P. 336; Nampa & Meridian Irr. Dist. v. Briggs, 27 Idaho 84, 147 P. 75; Knowles v. New Sweden Irr. Dist., 16 Idaho 217, 101 P. 81; Merchant's Nat. Bank of San Diego v. Escondido Irr. Dist., 144 Cal. 329, 77 P. 937.

What is said here is not in conflict with Colburn v. Wilson, 24 Idaho 94, 132 P. 579, nor with Gedney v. Snake River Irr. Dist., 61 Idaho 605, 104 P.2d 909. In those cases the water rights of the respective owners were of the same origin and of equal priority. No classification of lands was made in the organization of the districts nor in the assessment of benefits, based upon any difference in the cost of construction or of maintenance and operation. Nor was there any enlargement or extension of either district after the original landowners' rights had become fixed.

The holding of the court, that the owners of new lands are subject to assessment for benefits over and above the $125 per acre to the extent necessary to pay the cost of acquiring additional water rights and of enlarging, equipping and extending its system to their lands, is also recognized by the provision of I.C. § 43-1009, as follows:

" * * * The order shall describe the land so annexed to said district, and thereafter such land so annexed shall be subject to such assessments from time to time as the board of directors shall deem right under the circumstances, and such assessments shall be deemed to be assessments for benefits to said lands by reason of their annexation to said district. * * *"

The court also correctly held that the board of directors of the defendant district cannot be required to accept payment of benefits assessed and thereafter be required to deliver water to new lands (1628 acres) which have not been irrigated and for which no water right has been acquired or is available. Gerber v. Nampa & Meridian Irr. Dist., 16 Idaho 1, 100 P. 80; Gerber v. Nampa & Meridian Irr. Dist., 19 Idaho 765, 116 P. 104; Boley v. Twin Falls Canal Co., 37 Idaho 318, 217 P. 258. As hereinbefore set out, this conclusion is in keeping with the express conditions of the annexation. Moreover, enforcement of the claimed right to compel delivery of water to such lands, would effect an invasion of the constitutionally protected priority rights, and property rights, of the owners of the old lands, hereinbefore cited. Bennett v. Twin Falls, etc., Co., 27 Idaho 643, 150 P. 336; Nampa & Meridian Irr. Dist. v.

Briggs, 27 Idaho 84, 147 P. 75; Knowles v. New Sweden Irr. Dist., 16 Idaho 217, 101 P. 81; Merchants' Nat. Bank of San Diego v. Escondido Irr. Dist., 144 Cal. 329, 77 P. 937.

Judgment affirmed.

Costs to respondents.

KNUDSON, C. J., and McQUADE, Mc-FADDEN and SMITH, JJ., concur.