539 P.2d 995

**Ira PARKE and Ann Parke, husband and wife, Appellants and Cross-Respondents,**

**v.**

**Leo BELL, Respondent and Cross-Appellant.**

**No. 11676.**

Supreme Court of Idaho.

Sept. 10, 1975.

Lawrence H. Duffin, Burley, for appellants.

John C. Hepworth, Buhl, John R. Coleman, Parry, Robertson, Daly & Larson, Twin Falls, for respondent.

McFADDEN, Justice.

This action involves the right to the use of certain waters flowing in Cow Gulch and in Asher Canyon in Cassia County. Kimes Spring arises in Cow Gulch which runs generally in a northwesterly direction and is tributary to Marsh Creek. Powell Spring rises in Asher Canyon which also runs northwesterly, almost parallel to Cow Gulch. Both springs are located in the northeast quarter of Section 15, Township 12 South, Range 25 E.B.M. which property is owned by plaintiffs Ira Parke and Ann Parke, husband and wife.

Waters from Kimes Spring and other waters that flow in Cow Gulch early in the year are diverted out of that water course by a ditch which traverses the Parke land in a northwesterly direction. Waters from Powell Spring are also diverted from Asher Canyon by a ditch which runs northwesterly, then in an easterly direction, and joins the ditch carrying the Cow Gulch water. This ditch then continues in a northwesterly direction to the North Half of the Northeast Quarter of Section 9 of the same township and range, which land is owned by defendant Leo Bell. Bell uses the ditch to bring water from Cow Gulch and Asher Canyon to irrigate the premises owned by him in Section 9. The ditch, after it leaves Parkes' property, crosses lands of others for about .9 miles before reaching Bell's property.

The Parkes instituted this action seeking damages from Bell for allowing the ditch to erode damaging the plaintiffs' property, for an injunction enjoining Bell from diverting more than the amount decreed to him from Cow Gulch, from enlarging the ditch across the plaintiffs' property and from increasing the servitude upon their land. Bell counterclaimed, seeking among other relief, damages caused by the plaintiffs' interference with his water rights, for a decreed right to divert 1.6 cubic feet per second (80) inches of water from Asher Canyon and Powell Spring, with a date of priority of 1930 for use upon his lands in Section 9, and for injunctive relief against the Parkes to stop them from interfering with his diversion works and ditch leading from Asher Canyon.

In 1892, in the case of *Wood et al. v. Stokes et al.*, one Holbrook, Bell's predecessor in interest, was decreed eight inches of water from Cow Gulch with a priority date of June 1, 1881, for use upon the land now owned by Bell. In 1910, one Butler, another predecessor in interest of Bell in the case of *Bridger et al. v. Tremayne,* was also decreed 92 inches of "the flush or undecreed waters of Marsh Creek and its tributaries with a priority date of April 12, 1892" for use on the same land. The record discloses that the waters from Cow Gulch, a tributary of Marsh Creek which includes the waters from Kimes Spring, has historically been used for irrigation on the property of Bell, except for some stock watering near the spring.

The property on which Powell Spring is located was owned by Bell's father from 1929 until the county acquired title for non-payment of taxes. In 1930 Bell's father and two older brothers constructed a diversion and a ditch from Powell Spring in Asher Canyon. This ditch ran northwesterly and connected with the ditch from Cow Gulch to the property in Section 9. According to the uncontroverted findings of the trial court Bell and his predecessors in interest have continuously diverted the waters of Powell Spring since 1930. Subsequently, the Parkes obtained a water license for 66 inches of Asher Canyon waters with a 1958 date of priority.

After trial, the court, sitting without a jury, entered amended findings of fact, conclusions of law and a judgment decreeing Bell the right to divert eight inches of the waters of Cow Gulch, including the waters of Kimes Spring, with a priority of 1881, and a right to divert 92 inches of

"the excess flush of waters of Asher Canyon and Cow Gulch, including Powell and Kimes Spring waters, with a priority date of 1892." Bell was also awarded a right to divert "all the other waters of Asher Canyon" with a 1930 priority "subject to plaintiff's [the Parkes] license for 66 inches * * * of Asher Canyon waters with a priority date of 1958". The court denied prayers for punitive damages and held that the Parkes had failed to establish proof of monetary damages, and that proof of Bell's monetary damages was conjectural and speculative, and thus refused to award damages to either party. The Parkes appealed from the judgment and Bell cross-appealed from the judgment wherein he was denied damages and his 1930 right was made subject to Parkes' 1958 right.

The Parkes first contend that the trial court erred in not finding that the waters of Kimes Spring and Powell Spring were private waters owned by them and thus not subject to appropriation. I.C. § 42–212. We disagree.

First, concerning Kimes Spring, Bell is the successor in interest of original appropriators of the waters from Cow Gulch. His predecessors in interest were decreed 8 inches of water from Cow Gulch in the 1892 adjudication in the case of *Wood et al. v. Stokes et al.*, and other predecessors in interest were decreed 92 inches of "the flush or undecreed waters" with date of priority of 1892, in the 1910 case of *Bridger et al. v. Tremayne.* During trial the parties stipulated as to the validity of these decrees and of Bell's right to the use of these waters out of Cow Gulch. The Parkes only questioned the place of measurement of these rights.

Next, concerning Powell Spring, between 1929 and some years later when the property reverted to the county for nonpayment of taxes, Bell's father owned the land on which this spring was situated. In 1930, Bell's father diverted the water from Asher Canyon, by construction of a diversion point, a ditch from Asher Canyon over to where it joined the ditch leading from Cow Gulch. Through this irrigation system the waters flowing at the point of diversion in Asher Canyon were conducted to the Bell property in Section 9 and have since been applied to irrigation of the land owned by Bell in Section 9.

Prior to the enactment of I.C. § 42–201 in 1971, there were two distinct and equally valid methods whereby a right to appropriate water could be acquired: the constitutional method and the statutory method. *Pioneer Irrig. Dist. v. American Ditch Ass'n,* 50 Idaho 732, 1 P.2d 196 (1931); Hutchins, The Idaho Law of Water Rights, 5 Idaho Law Review, 1, 20 (1968). Since these appropriations occurred prior to enactment of section 42–201 in 1971, it is not applicable.

▮ Bell's father used the constitutional method of appropriation when he diverted the water and applied it to a beneficial use. *Nielson v. Parker,* 19 Idaho 727, 115 P. 488 (1911). Since he owned the property (Powell Spring) upon which the water was located, the appropriation was not instituted in trespass. Cf. *Lemmon v. Hardy,* 95 Idaho 778, 519 P.2d 1168 (1974); I.C. § 42–212. Thus, the appropriation was valid when made. The water right thus perfected is appurtenant to the land which receives the benefit of the water and thus passed on to Bell when he acquired title to the land in Section 9. *Bradshaw v. Milner Low Lift Irr. Dist.,* 85 Idaho 528, 381 P.2d 440 (1963); I.C. § 42–101. Parkes' subsequent acquisition of the lands on which the spring was situated can have no effect on this water right. Cf., *Mahoney v. Neiswanger,* 6 Idaho 750, 59 P. 561 (1899).

▮ The Parkes also assign as error the trial court's failure to award damages to them for alleged erosion to their land caused by that portion of Bell's ditch on their property, and also failure of the trial court to enjoin Bell from allowing the ditch banks to further erode their property. There was evidence submitted indicating that the maintenance of the ditch across this property was inadequate and had

caused erosion to the property. There was also evidence that the erosion was occasioned by high water during spring runoffs. The trial court found that the amounts of erosion caused by the diversions and that caused naturally were indistinguishable. The trial court also found that:

> "For the past five years or so plaintiffs have molested and interfered with defendant's diversions by turning water into the natural channels, by damming and by cutting banks and dams. Plaintiffs also have padlocked the gate which gives access to the defendant's ditch system."

The court then held:

> " * * * defendant is entitled to go upon plaintiffs' land for the purposes of reasonable maintenance and repairs of his diversion works and ditch system; and plaintiffs are hereby permanently and perpetually enjoined and restrained from molesting or interfering with said defendant in the performance of the same."

The trial court also found that the Parkes had failed to establish proof of the monetary amount of damages they claim to have sustained. Examination of the record reflects that the trial court's findings were fully sustained. Under these circumstances it cannot be said the court erred in not awarding damages to the Parkes or issuing the requested injunction.

■ In his cross appeal, Bell claims that the court erred in failing to award him damages for the injury and destruction of his diversion works and ditch by Mr. Parke. While the record discloses evidence that Mr. Parke molested and interfered with Bell's diversions by turning water into the natural channels, as the trial court found, the trial court found that the proof of damages to Bell was conjectural and speculative. The record sustains this finding and the trial court did not err in

refusing to award Bell damages. *Ross v. Olson*, 95 Idaho 915, 523 P.2d 518 (1974).

■ Bell also claims the trial court erred in holding that his right to the use of the water out of Asher Canyon and from Powell Springs was subject to the water license of Parke for 66 inches with a priority date of September 9, 1958.[1] Bell prayed in his counterclaim that he be awarded 1.6 cubic feet per second (80 miner's inches) of the waters out of Asher Canyon. In its findings of fact and conclusions of law the court recognized that Bell had a prior right to the use of the waters of Asher Canyon, but did not specify the amount he was entitled to use other than to state he was entitled to divert all other water out of Asher Canyon subject to the Parkes license. In the judgment, the trial court awarded the prior right to use of Powell Spring and Asher Creek water to Bell, but subject to the Parkes' water license and subject to discretionary exercise of authority by the Department of Water Administration. This is a somewhat incongruous situation, especially in view of the fact that it cannot be determined from the findings or the record the amount of flow, how long the flow of water at Parkes' point of diversion lasts, nor how long the flow from Powell Spring continues after the initial spring runoff. It is recognized by all the parties that the length of flow of the waters from both Cow Gulch and Asher Canyon diminishes greatly after the initial spring flow of water subsides. The trial court in its decree required that Bell's diversions of water be measured at or near the points of diversion, or at such other place or places as the Idaho Department of Water Administration may determine will be just and proper. The difficulty with that is that it cannot be determined from the decree just how much water Bell is entitled to draw out of Asher Canyon by reason of the appropriation in 1930 made by his father. For this reason, that portion of the judgment is reversed.

1. This case is not one involving a summary supplemental adjudication of water rights under I.C. § 42–1405, but was started as a controversy between two parties only.

Thus, it is necessary that this case be remanded to the trial court to find the amount of water diverted and beneficially used in 1930 by Bell out of the Asher Canyon diversion.

The judgment of the trial court is affirmed in part and reversed in part and remanded for further proceedings in conformity with this opinion. Costs to respondent and cross-appellant.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.