(March 2, 1909.)

## J. L. NIDAY, Respondent, v. DANIEL BARKER et al., as Directors of the NAMPA & MERIDIAN IRR. DISTRICT, Appellants.

[101 Pac. 254.]

IRRIGATION AND WATER RIGHTS—DEDICATION OF WATER BY USE—POINT OF DELIVERY—REPAIR OF DITCHES, CANALS AND LATERALS.

1. Where water has been delivered to lands under a rental and distribution, and has been used and applied by the land owner under such rental for the purposes of raising crops, the right to such use becomes a dedication within the meaning of sec. 4 of art. 15 of the constitution, and the user and consumer is entitled to the continued use thereafter on payment of the rental rates established in conformity with law.

2. A dedication within the purview of the constitution is commensurate only with the character and kind of waters dedicated and the use and regularity of the use to which they were applied. If the waters received and used and applied by a subsequent settler and claimant are a part of the waters included within the appropriation of prior claimants, and are merely waters they are not, for the time, using or claiming, then the dedication and right to the subsequent use thereof only goes to such waters, and merely constitutes a claim for the use of such waters as are not needed or applied by prior consumers at any given time during any subsequent season.

3. The fact that a canal company has furnished and delivered water to a consumer for the purpose of raising crops so as to amount to a dedication of the use within contemplation of the provisions of sec. 4, art. 15 of the constitution, raises the *prima facie* pre-

sumption that the company so furnishing and delivering water had that quantity of water over and above the amount required and previously appropriated and dedicated to other users and consumers from the same canal.

4. It is the duty of a canal company to turn the water for the consumer out of its main canal or lateral·at such place as will be most convenient for the consumer, and will cause least waste by seepage and evaporation.

5. Where the right to the use of waters from a canal has attached within the purview of the provisions of sec. 4, art. 15 of the constitution, and the water user pays or tenders the established water rental therefor, the question of the expense of delivery or the amount of waste by seepage, percolation and evaporation cannot be charged to the water user and consumer, but the burden and responsibility thereof rests upon the canal company.

6. It is the duty of canal and water companies to keep their ditches and canals in repair, so as to carry the water to the several consumers along the lines thereof.

(Syllabus by the court.)

APPEAL from the District Court of the Seventh Judicial District, for the County of Canyon. Hon. Ed. L. Bryan, Judge.

Action by plaintiff for a writ of mandate. Judgment for plaintiff and defendants appealed. *Affirmed.*

Hugh E. McElroy, for Appellants.

"Contracts whereby the irrigation company agrees to furnish more water than it has ability to furnish are illegal; and the company will be enjoined, at the instance of those holding prior rights, from selling water in excess of the capacity of its ditch and from compelling them to pro-rate with the purchasers of such excess rights." (Mills on Irrigation, 195, notes 61, 62.)

"Where applications to a water company for water for irrigation exceed the capacity of the company's canal to furnish it, it is the duty of the company to limit the contracts to its capacity and to those appropriators possessing the older rights of appropriation." ' (*Gould v. Maricopa Canal Co.,* 8 Ariz. 429, 76 Pac. 598.)

Rice & Thompson, J. L. Niday, and A. A. Fraser, for Respondent.

Under the statutes of this state the respondent Niday is entitled to have the water for the irrigation of his tract of land diverted from the canal of the appellant company at the point decreed by the trial judge. (*Pocatello Water Co. v. Standley*, 7 Ida. 155, 61 Pac. 518; *Candelaria v. Vallejos*, 13 N. M. 146, 81 Pac. 589.)

"A contract is not invalid nor is the promisor discharged merely because it turns out to be difficult, unreasonable, dangerous or burdensome." (10 Cyc. 625; *Wilmington Trans. Co. v. O'Neil*, 98 Cal. 1, 32 Pac. 705; *Williams v. Miller* (Cal.), 6 Pac. 14.)

AILSHIE, J.—The respondent commenced his action in the district court of Canyon county praying for a writ of mandate against the officers and directors of the Nampa and Meridian Irrigation District, requiring and compelling them to deliver eighty inches of water from the canal belonging to the district for the irrigation of his lands. The case was tried and the court made findings of fact and conclusions of law and entered judgment in favor of the plaintiff, and the defendants appealed. It appears that the plaintiff, who is respondent in this court, is the owner of a tract of land in Canyon county, and that for the irrigation of this land he claims water and a water right from the defendants through what is known as the Mason creek high line lateral. He alleges that he received water to the extent of eighty inches from this canal for use on his land during the years 1904 and 1905, and that the water was measured at the flume across Lake Paradox gulch, which delivered the water at the terminal of the defendant company's lateral and near plaintiff's land. He also alleges that the company began delivering this water for the year 1906, and continued to do so until the 15th of July, when it refused to make further delivery. He alleges that he had from year to year paid the annual rental charge for the delivery of water from this canal. The principal allegations of the complaint were denied by

the defendants. There is considerable conflict of evidence on most of the issues involved in this case. The trial court has made his findings of fact and thereby disposed of this conflict by finding in favor of the respondent and against the appellants. The 3d, 4th, 9th and 10th findings are as follows:

"3d. That in the spring of the year 1904 plaintiff placed a portion of said land in cultivation, and during said year planted a crop thereon, and made application to the Boise City Irrigation and Land Company for eighty (80) miner's inches of water, the equivalent of 1.6 cubic feet per second of time, that said company delivered said water under said application for the irrigation of said lands, and that said water was so applied.

"4th. That during the year 1905, plaintiff had a large amount of said lands in cultivation to grass and grain, to wit, about 100 acres, and regularly made his said application to said Boise City Irrigation and Land Company for eighty (80) miner's inches of water, the equivalent of 1.6 cubic feet per second of water, for the irrigation of said lands, that said water was delivered to the defendant at the terminus of what is known as the Mason creek high line lateral of the Ridenbaugh Canal belonging to said company, said terminus being in section eighteen (18), township two (2) north of range one (1) west of Boise Base and Meridian, Canyon county, Idaho, and that said water was applied to the irrigation of said lands and for domestic use, and that plaintiff paid the established rate therefor."

"9th. That said Nampa-Meridian Irrigation District has a sufficient supply of water in its canal for the delivery of water to this plaintiff for said lands.

"10th. That about the 21st day of July, 1906, the said plaintiff made formal demand on the said defendant, Daniel Barker, as managing director of said district for the delivery of said water, and that he absolutely refused to deliver said water at said Mason creek high line lateral terminus, and still refuses so to do."

There is substantial evidence in the record to support each of these findings.

It should first be observed that the Nampa and Meridian Irrigation District is the successor in interest of the Boise City Irrigation and Land Company, to which latter company the respondent originally made application and from which company he received water for his lands.

From the foregoing findings the following facts are established: That the respondent had been receiving water from the appellant's canal during the years 1904 and 1905, and that he had paid the established rate therefor; that the appellant had a sufficient supply of water in its canal for delivery of water to the respondent, and finally, after making formal demand, the company refused and declined to deliver water to him. It also appears by finding No. 8, and is supported by the evidence, that at the beginning of the irrigation season of 1906, the respondent made application to the appellant for water for that irrigation season and paid the regularly established toll therefor in the sum of $80. It is useless for this court to go into a review of the evidence or a discussion of its weight or preponderance· It is amply sufficient, in our judgment, to sustain each finding made by the court. The appellant has argued here that the irrigation district is not in fact the owner of this high line lateral of about five miles in length, and that if it is required to furnish water to respondent, it should not be required to deliver it at his lands, but that the water should be measured at what is known as the Niday weir at the main canal, and from which point this Mason creek high line lateral receives the water from the main canal. It is established by the evidence, and so found by the court, that the delivery had previously been made from time to time at the terminus of the lateral at respondent's lands and not at the intake at the Niday weir. It seems pretty clear to us that this lateral belongs to the irrigation district and is a part of the canal system. It is the duty of the canal company to turn the water out either from the main canal or lateral at the most convenient point to the consumer (sec. 3288, Rev. Codes),

and this should be at such place as to cause the least waste by seepage or evaporation.

The controversy arose in this case as to whether the irrigation district had sufficient water to supply prior users and also supply respondent. The findings, however, are to the effect that the district in fact had sufficient water for respondent. It is clear that the water had been applied to respondent's lands during at least a part of one previous year, and a part, if not the whole, of another year, under a rental rate, and the use thereof resulted in a dedication of the waters under the provisions of sec. 4, art. 15 of the constitution, and the canal company could no longer deny him the right for such waters as had been supplied, so long as he continued to pay the rental charges. (*Hard v. Boise City Irr. Dist.*, 9 Ida. 589, 76 Pac. 331, 65 L. R. A. 407; *Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134.)

Under the findings in this case, we do not think we are called upon to consider the question as to whether or not the irrigation district could be heard to interpose the defense that all the waters in its canals were necessary for prior users and consumers. The findings directly contradict that position. It is also clear that the constitutional dedication had taken place under sec. 4, art. 15 of the constitution, and it necessarily follows that while that right was growing up and being established, the canal company must have had sufficient water for all prior users and consumers and enough left to supply respondent with the amount he had been receiving. It is not likely that prior claimants to waters of this canal system who are entitled to receive and use water therefrom have allowed water to be carried past them from year to year, and on down to the extreme end of the canal system and there delivered to a subsequent settler and user. The very fact that water was carried past all other appropriators along the line of the canal and down to the very last settler at the extreme end of the system raises a *prima facie* presumption that there was sufficient water for this purpose left over after all other users and consumers had been supplied.

In this connection it should be remembered that a dedication within the purview of the constitution is commensurate only with the character and kind of the waters dedicated and the use and regularity of the use to which they were applied. If the waters received and used and applied by a subsequent settler and claimant were a part of the waters included within the appropriation of prior claimants and were merely waters they were not, for the time, claiming or using, then the dedication and right to the subsequent use thereof would only go to such waters, and would merely constitute a claim for the use of such waters as are not needed or applied by prior consumers at any given time during any subsequent season. It is true that it will become a somewhat indefinite and uncertain right, and yet it will be a fixed right to the particular class of waters.

The theory of the law is that the public waters of this state shall be subjected to the highest and greatest duty. (*Van Camp v. Emery*, 13 Ida. 202, 89 Pac. 752.) The fact that a water user and consumer has a rental right for a fixed number of inches of water does not of itself entitle him to that amount of water, unless he can and will apply it to a beneficial use, and whenever he ceases to apply any part of it to such use, his right to have that amount turned out to him ceases for the time being, and the extra quantity becomes at once available for another user and consumer. If, on the other hand, the appropriation is of waters that are not subject to the claim and appropriation of a prior claimant and user, the dedication becomes absolute and continuous, subject to the rule previously announced, that such claimant apply it to a beneficial use. The dedication to the extent of the use, subject only to the foregoing limitations as to the character of waters so used, attaches under the provisions of the constitution whenever the water has been applied to a beneficial use under the sale, rental or distribution.

The question is also presented here and the contention is made that the district should not be required to furnish respondent with water because there is such an enormous seepage and evaporation in this five miles of high line lateral

that it is next to impossible to deliver water at respondent's farm. The evidence to that effect was offered and rejected by the court. It does not seem to us that that was a proper or material issue. It was established, and the court so· found, that the canal company had in previous years actually delivered the water through this lateral to the respondent. The fact that the seepage became greater and the loss of water increased in subsequent years should not be charged to the land owner. The duty devolves upon the ditch company to maintain and keep in repair its ditches, canals and laterals. The owner of such property must necessarily keep it in repair. (Sec. 3307, Rev. Codes; *Bothwell v. Consumers' Co., Ltd.*, 13 Ida. 568, 92 Pac. 533; *Pocatello Water Co. v. Standley*, 7 Ida. 155, 61 Pac. 518.)

The further contention is made in this connection that to keep this lateral in sufficient repair to deliver water to respondent's lands will entail such an enormous cost as will greatly exceed the rental charges paid by respondent. This is not a sufficient reason for refusing to deliver the water. We do not apprehend that rental charges for the use of water from irrigating canals are based upon the actual expenses of carriage and delivery to each individual consumer. If that were true, the rate charged to the land owner at the upper end of the main canal would be comparatively insignificant, while the rate charged to the man who lives at the extreme end of the canal, fifty or sixty miles from its intake, would be so enormous and exorbitant as to prohibit its use and make agricultural pursuits an impossibility with him. This is not the theory on which water rates are established.

Appellants complain of that provision found in the decree which requires that they shall deliver water to respondent, "subject only to such cut or diminution as shall be applied by said board of directors to all other water users supplied by said district." The objection made to this is that it is not justified by the findings nor authorized by law. It is a sufficient answer to this objection to say that it does not injure or prejudice the appellants. Appellants are directed to turn out the number of inches of water to which respond-

ent is entitled, subject only to whatever diminution is made on all other users and consumers. If there is any error or prejudice in this provision of the judgment, it is against the respondent and not the appellants. The appellants cannot be injured if they are permitted to turn out a less quantity of water than the number of inches to which the respondent is actually entitled.

A number of ancillary and incidental questions are argued and presented by appellants in this case, but we do not deem it of importance to go into further detail in their consideration or discussion in this opinion. We find no error in the record, and the judgment must therefore be affirmed. It is so ordered, with costs in favor of respondent.

Stewart, J., concurs.

SULLIVAN, C. J., Dissenting.—I am unable to concur in the conclusion reached in this case. If under the evidence the respondent is entitled to receive any water whatever, it ought to be measured to him at the Fogarty or Niday weir.

Petition for rehearing denied.