## NEW YORK CANAL CO., Limited, v. BOND et al.

### (District Court, D. Idaho, S. D.   May 24, 1921.)

1. **Waters and water courses** ☞257(1)—**Charges to users of water from government project upheld.**

Under a contract by which the government took over the canal system of an irrigation company for the purpose of incorporating it in a larger government project, and providing that "an equitable proportion of the cost of maintaining and operating the system of irrigation works which may be constructed by the United States on the south side of the Boise Valley, as may be determined by the Secretary of the Interior, shall be paid to the United States by the holders of said certificates of stock," the fact that during the construction of the government project the manager made charges for water furnished such stockholders on a different basis *held* not to affect the right and duty of the Secretary, after completion of the project, to make the apportionment as expressly provided in the contract.

2. **Contracts** ☞170(1)—**Practical construction by parties binding only where terms are ambiguous.**

Where the meaning of an instrument is clear, error in its construction by the parties cannot control its effect.

In Equity. Suit by the New York Canal Company, Limited, against J. B. Bond and Charles F. Weinkauf. Decree for defendants.

C. C. Cavanah and A. A. Fraser, both of Boise, Idaho, for plaintiff.

J. L. McClear, U. S. Atty., and B. E. Stoutemyer, both of Boise, Idaho, for defendants.

DIETRICH, District Judge. On March 3, 1906, the government, having on foot a project for the irrigation of a large body of arid lands near Boise, Idaho, entered into a contract with the plaintiff corporation by which it took over the ownership and control of a canal system theretofore constructed by the plaintiff, and diverting water from the Boise river for use upon lands owned by its stockholders. From the enlarged system the plaintiff and its stockholders were to receive from year to year the water which they had appropriated, the amount of which was stipulated, and in turn they were to share in the burden of maintaining and operating the system. Their obligation in this respect is defined in the following paragraph of the agreement:

"It is further agreed that an equitable proportion of the cost of maintaining and operating the system of irrigation works which may be constructed by the United States on the south side of the Boise Valley, as may be determined by the Secretary of the Interior, shall be paid to the United States

by the holders of said certificates of stock. The holders of rights under said contracts with the company shall pay to the United States the cost of maintaining and operating such system of irrigation works in accordance with the terms of their said contract."

The enlarged system was not completed until 1917, and in the meantime, from year to year, the project manager made charges against the plaintiff upon the basis of a proportionate part of the expense of maintaining and operating that part of the system approximating in length and location the canal as it existed when taken over by the government. These charges the plaintiff paid. Upon the completion of the project the Secretary apportioned to the plaintiff, each year, for the years 1918, 1919, and 1920, an equitable part of the expense of maintaining and operating the whole of the enlarged system, as constructed by the government, on the south side of Boise Valley, and these bills plaintiff declined to pay, and because of such refusal the defendant Bond, who is the project manager, threatened to withhold the delivery of water from the plaintiff's stockholders. To prevent such threatened action, the plaintiff brought this suit and procured a temporary restraining order. The cause is now submitted upon the merits.

[1] There is little controversy touching the facts, and the question of law is a narrow one. Primarily it involves the meaning of the paragraph above quoted from the contract. By the plaintiff it is conceded that the system, as constructed by the government on the south side of the Boise Valley, is substantially what was contemplated when the contract was executed, and that the charges in question are for a portion of the actual expense of maintaining and operating this system. It does not contend that in making the apportionment the Secretary acted fraudulently, or that if the expense of maintaining and operating the entire system is to be taken as the proper basis, the amount apportioned to it is excessive or inequitable. Its position is that because, during the period of construction, extending over the years from 1906 to 1917, the charges were made upon a different basis, the Secretary must be deemed to have determined the method of making the equitable apportionment contemplated by the contract, and from that method he cannot now depart. In that connection it is conceded that under the contract he might originally have adopted the basis which he now attempts to use, but, having employed the other method for a course of years, he is bound thereby. Not that he is estopped, for admittedly no element of estoppel is present. Nor is it contended that the provision of the original contract has been modified.

[2] The plaintiff's sole reliance is upon the principle that, where the language of a contract is indefinite or uncertain, the interpretation placed upon it by the parties themselves in giving it practical effect is a consideration of great, if not controlling, weight. But, even if we assume, without deciding, that here the Secretary had knowledge of and approved the bills rendered for the period from 1906 to 1917, it is to be noted, first, that the rule is of doubtful application, for the reason that the Secretary's interest is not the same as that of a party to a private contract. In the second place, in the light of the admitted fact that the system for the maintenance of which the charge is made is sub-

stantially what the parties had in mind at the time the agreement was entered into, the principle is thought to be inapplicable, because the provision under consideration is not uncertain, ambiguous, or indefinite; its meaning is clear and unequivocal. The plaintiff is to bear an equitable proportion of the expense of maintaining and operating, not a part, but all, of the system; there is no room for construction. It is not left to the Secretary to determine what shall be distributed or apportioned; that the contract of the parties expressly designates, and the Secretary's duty is limited to its equitable distribution. He is to apportion the "cost of maintaining and operating the system of irrigation works * * * on the south side of the Boise Valley"—not of a part of it, but of all of it. Where the meaning of an instrument is clear, error of the parties in construing it cannot control its effect. 4 Enc. U. S. Sup. Ct. Reports, 574; Railroad Co. v. Trimble, 77 U. S. (10 Wall.) 367, 19 L. Ed. 948.

Finally, the bills presented by the project management and paid by the plaintiff, from 1906 to 1917, do not necessarily imply a construction of the contract inconsistent with that now maintained by the Secretary. The system was incomplete, and the method adopted may not unreasonably have been regarded as fairly equitable during the period of construction. The Secretary is not bound to adopt, or, having once adopted, permanently to employ, any specific method of making the apportionment. The conditions are not fixed or invariable. Admittedly the amount of the charge against the plaintiff may change from year to year, and it is conceivable even that the proportion to be assigned the plaintiff will be subject to a measure of variation because of changing conditions. But surely the Secretary is not limited to any given method of making the apportionment. His one substantive duty is to determine what is plaintiff's equitable proportion, not of a part, but of the entire burden, and the use of one method in the performance of the task this year is not necessarily inconsistent with the use of another method next year. The parties have the right to insist upon results, but not the means or method, and so long as the result is within the terms of the contract, and the Secretary acts reasonably and in good faith, there is no legal ground for complaint. The principle of apportioning maintenance costs as provided for in the contract, and followed by the Secretary in making the charges in controversy, generally prevails in actual practice, and is recognized by the Supreme Court of the state as being just. Niday v. Barker, 16 Idaho, 73, 101 Pac. 254; Colburn v. Wilson, 24 Idaho, 94, 132 Pac. 579. And, as already intimated, there is no claim here that, applying this rule, the Secretary made an inequitable apportionment.

It follows that the bill must be dismissed, and such will be the decree.