(No. 6685. June 27, 1940.)

F. S. GEDNEY, Respondent, v. SNAKE RIVER IRRIGA-
TION DISTRICT, W. N. SCHOFIELD, Wm. ROGERS
and PAUL REH, as Directors, and All the Members of
the Board of Directors of SNAKE RIVER IRRIGA-
TION DISTRICT, a Public Corporation, Appellants.

[104 Pac. (2d) 909.]

Martin & Martin, for Appellants.

Edwin Snow, for Respondent.

MORGAN, J.—February 2, 1910, Snake River Irrigation Company, Ltd., hereinafter called the construction company, entered into a contract with the state of Idaho to build an irrigation system for the reclamation of a tract of land pursuant to an act of congress approved August 18, 1894, commonly known as the "Carey Act," and amendments thereto, and pursuant to applicable laws of Idaho and rules and regulations of the state board of land commissioners. In accordance with the contract Snake River Canal Company was formed for the purpose of operating and managing the irrigation system by means of which the land was to be reclaimed and irrigated. The land lies at different levels above Snake River, from which water is pumped into three canals, built by the construction company, to irrigate it. The lower canal is about 50 feet, the middle canal about 100 feet, and the upper canal about 150 feet above the river.

February 28, 1917, the construction company conveyed the irrigation system to Snake River Canal Company and in that year Snake River Irrigation District, appellant herein, was organized for the purpose of becoming, and it became, successor to the canal company in the operation and maintenance of the irrigation system.

Until 1938 each irrigated acre within the district was assessed equally with all others to pay the cost of maintenance and operation of the system, including the expense of pumping. On or about March 1, of that year, the board of directors of the district adopted a resolution fixing tolls for the use of water to irrigate lands within the district, other than the cost of power for pumping, at $1 for each acre of land irrigated. The charges for pumping were fixed, by the board, at $1.70 per acre for land watered by the lower canal, $4.20 per acre for land watered by the middle canal and $8.03 per acre for land watered by the upper canal. Each acre is entitled to receive the same amount of water. Respondent's land is watered through the upper canal, and he commenced this suit, on behalf of himself and all landowners like situated, to enjoin the collection of the tolls.

Trial resulted in a decree in plaintiff's favor, from which defendants appealed.

A number of questions have been presented, but we believe the decision may be based on the statutes authorizing and regulating the collection of money with which to pay the expenses of maintenance and operation of irrigation districts, I. C. A., section 42–701, which relates to assessments for maintenance and operation of irrigation districts, provides:

"In all districts in which an assessment is levied for the purpose of maintaining and operating the works of said district, the board of directors shall meet at the office of the district on the third Tuesday of August of each year and proceed to levy an assessment upon all the lands of the district for expense of maintaining and operating the property of the district . . . . Said assessment shall be spread upon all the lands of the district and shall be proportionate to the benefits received by such lands growing out of the maintenance and operations of the said works of said district. Such assessment shall be carried out by the secretary and entered into an appropriate column on the assessment roll immediately and shall be subject to review by the board of correction, hereinafter provided for."

Section 42–905, which is a part of title 42, chapter 9, of the code, having to do with irrigation districts, entitled "Construction Work and Acquirement of Property," has this provision:

"For the purpose of defraying the expenses of the organization of the district, and of the care, operation, management, repair and improvement of such portion of said canal and works as are completed and in use, including salaries of officers and employees, the board may fix rates of tolls and charges for use of water from the canals and irrigation works and plants or equipment of the district, and in addition thereto may provide for the payment of such expenses, either in whole or part, by levy of assessments therefor, as provided is section 42–701. Where a toll is fixed for the payment of part of such expenditures and an assessment levied for the remainder, any portion of such toll, remaining unpaid at the time fixed for levying the next annual assessment, in the

discretion of the board may be added to and become part of the assessment against the land delinquent in the payment of such toll; and where both a toll is fixed and assessment levied for the same expenditures, the amount paid as toll may be applied as credit upon such assessment.''

There is room for doubt that the legislature intended section 42–905 to apply to districts wherein the irrigation systems have been completed. During the course of construction of an irrigation system, it would be unjust to exact payment, for maintenance and operation, on all lands within the district, because tracts to which water has not been made available should not be assessed for that purpose. It might be that some water, but not an adequate supply, would be available to certain lands before the completion of the system, and an equal assessment against all lands would be inequitable. Under such circumstances tolls would be preferable to uniform assessments. However that may be, there is nothing in the law to indicate a legislative intention that a board of directors of an irrigation district, wherein the system has been completed, shall have power to make an additional charge against lands embraced therein, because the cost of conducting water to them is greater than it is to conduct water to other lands within the district.

After an irrigation district's works have been completed, as in this case, the cost of maintenance and operation, whether collected by means of assessments or tolls, ''shall be spread upon all the lands of the district and shall be proportionate to the benefits received by such lands growing out of the maintenance and operations of the said works of said district.'' (Sec. 42–701.)

It could not have been the legislative intention to create two methods of raising money for maintenance and operation of a completed irrigation system in an irrigation district, one by assessment which must be uniform according to benefits received, and the other by tolls which need not be uniform nor based on benefits received, but may be based on cost of delivery of water. The cost of delivering water to land situated near the lower end of a canal, fifty miles long, is, of course, greater than is the cost of delivering a like quantity of water to land near the upper end thereof, while

the benefits to each tract, per acre, is the same. To permit a board of directors to charge tolls to each tract of land, sufficient to pay the cost of delivery of water from the source of supply to it, individually, violates the principles of cooperation on which our irrigation district laws are based and would render valueless all land intended to be benefited, except that situated near the head of the canal.

In *Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579, there was involved the cost of maintenance and operation of an irrigation system which took water from Payette River and conducted it to land to be irrigated. The canal, by means of which water was diverted from the river, forked before the land to be irrigated was reached, one branch continuing along the north side of the river and the other crossing through a syphon, to the south side. Each branch of the canal irrigated lands within the district. The irrigated acreage on the north side of the river was greatly in excess of that on the south side, and the expense of maintenance and operation of the branch on the south side was greatly in excess of the expense, for like purpose, on the north side. The question involved in the case was as to whether the lands watered from the canal on both sides of the river should be assessed equally per acre to pay the expense of maintenance and operation of the system below the point of division of the canal. The decision of that question is reflected in section 3 of the syllabus, as follows:

"It was the intention of the legislature in enacting title 14 of the Rev. Codes, providing for the organization and government of irrigation districts, which includes sec. 2407, [sec. 42–701] that the lands irrigable under the system within the district should be considered as a whole, and such lands must be assessed, for the maintenance and operation of the water system, at the same rate, where the benefits, that is, the water needed and received, are the same."

The decree is affirmed. Costs are awarded to respondent.

Ailshie, C. J., Budge, Givens and Holden, JJ., concur.

ON PETITION FOR REHEARING.

(August 27, 1940.)

PER CURIAM.—The petition for rehearing is denied. In view of the contentions made in the petition for rehearing, we deem it proper to state herein that the opinion, heretofore filed and adhered to now, does not and is not intended to pass upon any questions other than the specific issue considered in the opinion. It is not intended to pass upon or adjudicate any other questions argued in the briefs or incorporated in the findings of the trial court.