# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 35543-2008

| | | |
|---|---|---|
| DAVID NELSON and LOY PEHRSON, et al., | ) ) ) | Boise, August 2009 Term |
| Plaintiffs-Appellants, | ) ) | 2009 Opinion No. 116 |
| v. | ) ) | Filed: September 30, 2009 |
| BIG LOST RIVER IRRIGATION DISTRICT; Board of Directors, RICHARD REYNOLDS, CHARLIE HUGGINS, KENT HARWOOD, JOEL ANDERSON, M. MARX HINTZE; IDAHO DEPARTMENT OF WATER RESOURCES; and DAVID R. TUTHILL, JR., Director, | ) ) ) ) ) ) ) ) ) ) | Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) ) | |
| and | ) ) | |
| ROBERT WADDOUPS, et al., and JAY F. PEARSON, et al., | ) ) ) ) | |
| Intervenors-Respondents. | ) | |

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, in and for Custer County. The Hon. Jon J. Shindurling, District Judge.

The judgment of the district court is affirmed.

Hutchinson & Brown, LLP, Twin Falls, for appellants. Patrick D. Brown argued.

W. Kent Fletcher, Burley, for respondents the irrigation district and its directors.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent Department of Water Resources and its Director. Harriet A. Hensley argued.

Holden, Kidwell, Hahn & Crapo, Idaho Falls, for intervenors. Robert L. Harris argued.

---

EISMANN, Chief Justice.

This is an appeal by water users within an irrigation district from a judgment of the district court determining that water lost when the district uses a section of river to convey its water to downstream diversion points for distribution to water users in the district must be allocated pro rata among those water users. We affirm the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

The Big Lost River Irrigation District was formed in 1920 to deliver irrigation water to its members who had decreed water rights. In 1936, it purchased the Mackay Dam and Reservoir and storage water rights in the reservoir in order to supplement the decreed water rights owned by various water users in the District. The Mackay Reservoir is on the Big Lost River, and the District uses the river to convey the storage water from the reservoir to various diversion points, through which the storage water is diverted from the river for delivery to landowners within the District. Because of the gravel deposits and porous soils through which the river flows, a significant amount of the storage water is lost by seepage while it flows down the river from the reservoir to the diversion points. This loss of water is called "conveyance loss" or "shrink." The lower reaches of the river experience significantly greater shrink than do the upper reaches.

Over the years, the Irrigation District has dealt in various ways with allocating the conveyance loss among its water users. Prior to 1994, the District used the "universal shrink" method under which the conveyance loss was allocated on a pro rata basis to all landowners in the District, regardless of the locations of their respective points of diversion from the river. Beginning in 1994, it generally used a formula that apportioned the conveyance loss to various sections or reaches of the river, resulting in a larger percentage of the loss being apportioned to its water users who were farther downstream. On May 5, 2005, the Directors voted to resume using the universal shrink method.

The Plaintiffs are sixty-four landowners who receive storage water that is diverted from the upper reaches of the river. On July 28, 2005, they filed this action against the Irrigation District and its Directors seeking to prevent implementation of the universal shrink method of allocating the conveyance losses. Plaintiffs alleged that the storage water they received from the

river should be administered as if they were the appropriators of the natural flow from the river rather than landowners within an irrigation district.[1]

On August 12, 2005, the Plaintiffs filed an amended complaint adding a claim for a declaratory judgment that IDAPA Rule 37.03.12.040.03.b (Rule 40.03.b) adopted by the Idaho Department of Water Resources required apportionment of the conveyance loss by reach. The Irrigation District responded by filing a counterclaim also asking the court for a declaratory judgment regarding the meaning of the Rule. Because both the Plaintiffs and the District were seeking a declaratory judgment as to the meaning of the Rule, the district court required that the Plaintiffs join the Department as a defendant in this action. On June 19, 2006, the Plaintiffs filed a second amended complaint, adding the Department and its Director[2] as defendants.

A group of approximately 448 water users (Intervenors) were granted permission to intervene in this action as defendants. Approximately 188 of them are landowners in the Irrigation District whose lands are located downstream from the Plaintiffs' properties and who are entitled to the use of the storage water. The others are landowners within or near the District who are not entitled to the use of the storage water but who contend they would be harmed if the District reverted back to apportioning losses by reach. The Intervenors filed a counterclaim and cross-claim in which they sought a declaratory judgment that the District was required to allocate the conveyance loss on a universal or proportionately equal basis.

The Plaintiffs and the Irrigation District filed cross motions for summary judgment seeking a ruling as to the interpretation of Rule 40.03.b. That Rule provides:

> Conveyance losses in the natural channel shall be proportioned by the watermaster between natural flow and impounded water. The proportioning shall be done on a river reach basis. Impounded water flowing through a river reach that does not have a conveyance loss will not be assessed a loss for that reach.

---

[1] If the Plaintiffs were appropriators of the river's natural flow, their water would be measured at the point of diversion from the river with no conveyance loss assessment. However, the Irrigation District, not the Plaintiffs, is the appropriator of the storage water. *See Bradshaw v. Milner Low Lift Irr. Dist.*, 85 Idaho 528, 545, 381 P.2d 440, 449 (1963). The Irrigation District holds title to the storage water rights in trust for the benefit of landowners within the district, including the Plaintiffs. *Id*. Because the District uses the river to convey the storage water downstream to diversion points for distribution to its landowners, the conveyance loss that occurs as the storage water flows down the river reduces the amount of water that the District can distribute. It must therefore allocate that conveyance loss in some manner.

[2] At the time the second amended complaint was filed, Karl J. Dreher was the director of the Department and named as a defendant. Effective April 17, 2007, David R. Tuthill, Jr., became the director. On June 6, 2008, Mr. Tuthill was substituted for Mr. Dreher as a defendant.

Impounded water flowing through any river reach that does have a conveyance loss will be assessed the proportionate share of the loss for each losing reach through which the impounded water flows. To avoid an iterative accounting procedure, impounded water conveyance loss from the previous day shall be assessed on the current day.

The Irrigation District is located in Water District 34. Because the Irrigation District uses the river to convey its storage water to its water users, it must permit the watermaster of the Water District to distribute the water from the river into the Irrigation District's waterworks, and it must compensate the watermaster for those services. I.C. § 42-801. When the Irrigation District's storage water is in the river, it may be comingled with natural flow water. When the storage water is reclaimed from the river, there must be due allowance made for conveyance loss in order not to diminish the amount of natural flow water to which downstream users may be entitled. I.C. § 42-105(1). Therefore, the Department adopted Rule 40.03.b to specify how the Department's watermaster is to allocate such conveyance loss between natural flow and impounded water as it flows down the river.

The district court held that Rule 40.03.b did not apply to the Irrigation District's allocation of conveyance loss among its water users. The Department's director has "direction and control of the distribution of water from all natural water sources within a water district to the canals, ditches, pumps and other facilities diverting therefrom," I.C. § 42-602, including "water . . . turned into the channel of a natural waterway and mingled with its water, and then reclaimed," I.C. § 42-105. In order to perform that function, the director must divide the state into water districts. I.C. § 42-604. The director is also authorized to adopt rules and regulations "for the distribution of water from the streams, lakes, ground water and other natural water sources as shall be necessary to carry out the laws in accordance with the priorities of the rights of the users thereof." I.C. § 42-603. Water districts are created pursuant to Idaho Code § 42-604, while irrigation districts are created pursuant to Idaho Code § 43-101 *et seq*. The board of directors of an irrigation district is authorized "to establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of such land [within the district], as may be necessary and just to secure the just and proper distribution of the same." I.C. § 43-304.

On December 29, 2006, the district court entered a partial judgment dismissing the Plaintiffs' second amended complaint. After unsuccessfully seeking reconsideration of that

4

partial judgment, the Plaintiffs appealed to this Court. Because there had been no determination of the Intervenors' counterclaim and cross-claim, that partial judgment was not final. This Court therefore dismissed the appeal.

After the case was remanded back to the district court, the Irrigation District and the Intervenors stipulated to resolve the Intervenors' cross-claim against the District by agreeing that the District was required to use universal shrink as the method for allocating conveyance losses. Based upon that stipulation, the district court entered judgment on February 20, 2008, requiring the District to allocate conveyance losses exclusively by use of the universal shrink method. After unsuccessfully seeking reconsideration of that judgment, the Plaintiffs timely appealed.

## II. ISSUES ON APPEAL

1. Did the district court err in ruling that a 1936 decree does not limit the Irrigation District's discretion to adopt the universal shrink method of apportioning conveyance losses?
2. Did the district court err in ruling that the universal shrink method of apportioning conveyance losses is lawful?
3. Are either the Plaintiffs, the Intervenors, or the Irrigation District and its Directors entitled to an award of attorney fees on appeal?

## III. ANALYSIS

**A. Did the District Court Err in Ruling that the 1936 Decree Does Not Limit the Irrigation District's Discretion to Adopt the Universal Shrink Method of Apportioning Conveyance Losses?**

In 1935, the Irrigation District filed a lawsuit seeking court confirmation of a plan to issue and sell bonds in order to acquire supplemental water rights and irrigation works. The irrigation works included the Mackay Dam and Reservoir where the storage water at issue in this case is impounded prior to being released down the river for distribution to water users in the District. The decree in that lawsuit was entered in 1936. The Plaintiffs contend that the 1936 decree prevents the District from using the universal shrink method of apportioning conveyance loss. The Intervenors respond that this issue was not raised by the Plaintiffs in their second amended complaint, and therefore it cannot be considered on this appeal.

5

This case was decided on summary judgment. "[T]he only issues considered on summary judgment are those raised by the pleadings." *Vanvooren v. Astin*, 141 Idaho 440, 444, 111 P.3d 125, 129 (2005). A cause of action not raised in the pleadings may not be raised on appeal, even if the trial court considered the issue. *O'Guin v. Bingham County*, 139 Idaho 9, 15, 72 P.3d 849, 855 (2003). In this case, the Plaintiffs' second amended complaint only sought a declaratory judgment interpreting Rule 40.03.b. However, the Intervenors' counterclaim and cross claim sought "a Declaratory Judgment ruling that in the distribution of [the Irrigation District's] storage water, just and proper distribution of that storage water requires that conveyance loss, or shrink, must be assessed on a universal or proportionately equal basis." Based upon the stipulation between the District and the Intervenors, the district court entered judgment requiring the District to use the universal shrink method in allocating conveyance loss. The Plaintiffs' raised their argument regarding the 1936 decree in asking the district court to reconsider that judgment. Therefore, that argument was within the scope of the issues raised by the pleadings.

The lawsuit resulting in the 1936 decree was brought to obtain judicial confirmation for the issuance and sale of bonds. As part of the confirmation process, the Irrigation District's Directors were required to "examine each tract or legal subdivision of land in said district, and [to] determine the benefits which will accrue to each of such tracts or subdivisions from the construction or purchase of such irrigation works." I.C. § 43-404. The benefits determined by the Directors and found by the district court included supplemental storage water for some of the water users in the District. To determine the benefits accruing to the various properties, the Directors apportioned the benefits of the supplemental storage water to lands within the District based upon the decreed priority dates of other water rights appurtenant to such lands. In the 1936 decree, the court ruled that the Directors' determination of the apportionment of benefits, the amounts of apportionment, the factors considered in making the apportionment, and the basic rules and regulations governing the use and distribution of water upon the lands in the District "were just and equitable, and were regularly and legally done, had, made, determined and entered at the proper time and in the proper manner and order, and in full and strict compliance with the statutes and laws of the State of Idaho applicable thereto."

The 1936 decree does not mention the apportionment of conveyance loss. The Plaintiffs contend that it can be inferred from the findings of fact upon which the decree was based that the

6

court required apportionment of the conveyance loss by river reach. When reviewing the Directors' determination of the apportionment of benefits accruing from the purchase of the dam, reservoir, and storage water rights, the court made the following findings:

> That from such examination it appeared to the said Board of Directors of said Big Lost River Irrigation District and it was found and determined by said Board and this Court does find and determine that certain (but not all) of said lands within the district require also a supplemental storage water right from the reservoir and irrigation works proposed to be acquired by the district, such supplemental water rights so required being in varying amounts, depending on the priority of the decreed water right in Big Lost River and its tributaries belonging to the owner thereof substantially as shown in the following table:

The table following the above-quoted findings was a list allotting the supplemental storage water right in acre feet "Measured in [the] Reservoir" to the owners of decreed water rights, based upon the priority dates of their decreed rights. The owners were not listed; they were categorized according to priority date of the decreed water rights appurtenant to their lands. The allotment of the supplemental storage water ranged from none for the owners of properties with a pre-1884 decreed priority date to 1.79 acre feet for the owners of properties with a post-1899 decreed priority date.

The Plaintiffs contend that the court's approval of that apportionment of benefits implies that the court was ordering allocation of any conveyance loss by river reach because the allotment of supplemental storage water was measured in the reservoir. The Plaintiffs' argument is unpersuasive.

As a practical matter, the storage water allotted to the various water users in the Irrigation District had to be measured at the reservoir. The amount of storage water varies from year to year, depending upon the amount of precipitation. The district court recognized this in its 1936 findings of fact. It found that the "reservoir storage water proposed to be acquired by the district will in the *average year* yield not less than 24,500 acre feet measured in said reservoir." (Emphasis added.) It further found that the landowners would be entitled to their allotted amounts of storage water "in any year when the available storage water owned by the District equals 24,500 acre feet measured in the reservoir," but the allotments would have to be adjusted proportionally "in any year when the water supply belonging to the district and available for storage shall be more or less than 24,500 acre feet." Because the amount of storage water available for distribution varied from year to year, the most practical way to determine the water

7

allotted to the various water users was to measure it at the reservoir. The conveyance loss occurs after the water leaves the reservoir. Whether that loss is allocated by river reach or by the universal shrink method, it will be deducted from an amount of storage water initially measured at the reservoir. It is necessary to know the amount of water one starts with as measured at the reservoir in order to calculate the amount remaining after taking conveyance loss into account. It was also necessary to allot the storage water to individual users as measured in the reservoir. All of the users would not use their storage water allotments at the same time and in the same amounts. Specifying the varying allotments was necessary in order to determine throughout the irrigation season how much any individual water user was entitled to use.

If any method of allocating conveyance losses can be inferred in the 1936 findings of fact and decree, it would be the universal shrink method. In its findings of fact, the court found "that those lands within said district to which have been apportioned certain benefits designated 'Amount Storage Water Assessment' are benefited by the allotment to such lands of storage water in the amount of approximately $6.00 per acre foot for the storage water so allotted." The benefit found was "$6.00 per acre foot for the storage water so allotted" for each tract or legal subdivision of land, regardless of the land's distance from the reservoir. If the court had assumed conveyance losses would be apportioned by river reach, lands farther from the reservoir would receive a substantially smaller percentage of their storage water allotments than would lands closer to the reservoir. Therefore, the value to the land of a quantity of water measured at the reservoir would vary depending upon the land's distance from the reservoir. Valuing the benefits at the same dollar amount per acre foot of storage water allotted as measured at the reservoir would be consistent with allocating conveyance loss by the universal shrink method because each water user would receive the same percentage of his allotment.

The court did mention deducting water loss in its 1936 findings of fact. In a paragraph dealing with the storage and distribution of a landowner's decreed water, it stated:

> Provided, however, that nothing herein contained shall be construed to prevent the storage in said reservoir, whenever the same may be lawfully done, of decreed water belonging to any individual landowner of the district and subsequent distribution to such landowner for his use, *with such reasonable deduction for losses as may hereafter be fixed by the rules and regulations of the district*. (Emphasis added.)

8

Since it mentioned losses of decreed water stored in the reservoir, it is reasonable to assume that had the court intended to make any findings regarding the required method for allocating conveyance loss of the District's storage water, it would have done so.

The Plaintiffs also argue at length that the 1936 findings of fact should be interpreted as holding that, in effect, the allotments of supplemental storage water as measured at the reservoir should be treated as if the landowners entitled to receive that water were appropriators of the water at the reservoir. If they were, then any subsequent conveyance loss would be apportioned on a river reach basis. In 1908 this Court held, "The appropriation of waters carried in the ditch operated for sale, rental, and distribution of waters does not belong to the water users, but rather to the ditch company." *Farmers' Co-operative Ditch Co. v. Riverside Irr. Dist.*, 14 Idaho 450, 458-59, 94 P. 761, 763 (1908). In 1923 this Court wrote, "Under the provisions of C. S. § 4350,[3] the legal title to all property acquired by the [irrigation] district by operation of law vests immediately in the district and is held in trust for, dedicated to, and set apart to the use and purposes provided by law." *Yaden v. Gem Irr. Dist.*, 37 Idaho 300, 308, 216 P. 250, 252 (1923). In its 1936 findings of fact, the court stated that it was the Irrigation District that was going to purchase the dam, reservoir, and supplemental storage water rights. There is nothing in the findings of fact or decree indicating that the court disregarded the prior decisions of this Court and the applicable statutes and decreed that the water users, rather than the Irrigation District, would own the storage water rights in the reservoir.

Treating the Plaintiffs as if they were appropriators of the storage water would be contrary to the law. As this Court stated in *Nampa & Meridian Irr. Dist. v. Barclay*, 56 Idaho 13, 18, 47 P.2d 916, 918 (1935):

> The issue with which we are here confronted is founded on an erroneous theory which has been advanced from time to time by counsel for some of the ditch and irrigation companies and water users, to the effect that a water user who has acquired his right through "sale, rental or distribution" from a ditch or canal company or an irrigation or drainage district acquires the rights of an appropriator of the water and is entitled to the same consideration in all litigation involving the original appropriation to which the canal or ditch company or irrigation or drainage district is entitled. Such is not the law and it has never been so held or recognized in this state.

---

[3] The statute is now codified as Idaho Code § 43-316.

9

Neither the court's findings of fact nor its decree mention the allocation of conveyance loss with respect to the distribution of the supplemental storage water to the water users in the Irrigation District. The district court did not err in holding that the 1936 decree did not determine that conveyance loss must be apportioned by river reach.

**B. Did the District Court Err in Ruling that the Universal Shrink Method of Apportioning Conveyance Losses is Lawful?**

The Plaintiffs alleged that Rule 40.03.b required the Irrigation District to apportion conveyance loss by river reach. The district court held that the Rule did not apply to the District in the distribution of its water. The Rule required the Department's watermaster to proportion conveyance losses in the natural channel between natural flow and impounded water and to do so on a river reach basis. When there is both natural flow and storage water in the river, the watermaster must determine the relative amounts of natural flow and storage water at the various diversion points on the river. If that determination is not made, an appropriator of the natural flow may receive some of the Irrigation District's storage water, and conversely the District may receive natural flow water to which a downstream appropriator is entitled.

The Irrigation District is not required to allocate conveyance loss among its water users in the same manner in which the Department must account for conveyance losses in order to administer water in the river. The various water users in the District are not appropriators of the storage water. *Nampa & Meridian Irr. Dist. v. Barclay*, 56 Idaho 13, 18, 47 P.2d 916, 918 (1935). The District is the appropriator of that water. *Id.* The Directors have the power "to establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of such land [within the District], as may be necessary and just to secure the just and proper distribution of the same." I.C. § 43-304. We have not previously addressed the allocation of conveyance loss among water users in an irrigation district. The universal shrink method is consistent with our prior opinions regarding the operation of an irrigation district.

In *Colburn v. Wilson*, 24 Idaho 94, 132 P. 579 (1913), the irrigation district's main canal branched into two canals: the "north canal" on the north side of a river and the "south canal" on the south side. The north canal irrigated about 18,000 acres, the south canal irrigated about 4,800 acres, and neither canal irrigated lands on the opposite side of the river. In 1912, the expense of maintaining the north canal was $3,068.50, and the expense of maintaining the south

canal was $1,937.50. An owner of land irrigated from the south canal brought an action seeking to require the board of directors of the irrigation district to assess the expense of maintaining the north canal solely to the lands irrigated from that canal and to assess the expense of maintaining the south canal solely to lands irrigated from it. The board refused to do so, and the landowner appealed.

The statute governing assessments for maintenance and operation of an irrigation district's waterworks required "that such assessments shall be proportionate to the benefits received by such lands growing out of the maintenance and operations of said works." 24 Idaho at 102, 132 P. at 581. The plaintiff contended that he did not receive any benefit from the maintenance and operation of the north canal, and therefore his assessment should not include any portion of that expense. In rejecting that argument, this Court reasoned as follows:

> [I]t was the intention of the Legislature that all lands within an irrigation district available for and subject to irrigation, under the system constructed, *must be considered as a whole*, and that the assessment shall be spread upon all the lands of the district which are or may be supplied with water by such district, under said system.
>
> It is apparent from the creation of the district and the construction of the system and the maintenance of such system, that there can be no benefit to the land from the maintaining and operating of such irrigation system, other than the benefit arising from the supplying of the needed water. *The supplying of the water is the benefit sought by the provision of the act and the whole benefit is the water supplied, and the incident of such supply of water is the expenditure*.
>
> The benefit of the water supplied to the owners of land within the district, as provided by sec. 2407, means *such benefits as contribute to promote the prosperity of the district*, and add value to the property of the respective owners of the *entire district*, and such improvement of land in any portion of the district adds to and increases the value of the lands of the *entire district* as the water is applied and devoted to a beneficial use by the owners through said system.

24 Idaho at 103, 132 P. at 581-82 (emphases added).

In *Gedney v. Snake River Irrigation District*, 61 Idaho 605, 104 P.2d 909 (1940), an irrigation district pumped water out of the river into three canals for delivery to the water users in the district. The lower canal was 50 feet above the river, the middle canal was 100 feet above the river, and the upper canal was 150 feet above the river. The directors of the irrigation district decided to assess its water users for the varying cost of pumping. The pumping charges were fixed at $1.70 per acre for those receiving water from the lower canal, $4.20 per acre for those

11

receiving water from the middle canal, and $8.03 per acre for those receiving water from the upper canal. A landowner receiving water from the upper canal sued and prevailed in the trial court, and the district directors appealed. On appeal, this Court stated that there was nothing in the law giving the directors of an irrigation district the power "to make an additional charge against lands embraced therein, because the cost of conducting water to them is greater than it is to conduct water to other lands within the district." 61 Idaho at 610, 104 P.2d at 911. To illustrate that point, this Court gave the following example:

> The cost of delivering water to land situated near the lower end of a canal, fifty miles long, is, of course, greater than is the cost of delivering a like quantity of water to land near the upper end thereof, while the benefits to each tract, per acre, is the same. To permit a board of directors to charge tolls to each tract of land, sufficient to pay the cost of delivery of water from the source of supply to it, individually, *violates the principles of cooperation on which our irrigation district laws are based* and would render valueless all land intended to be benefited, except that situated near the head of the canal.

61 Idaho at 610-11, 104 P.2d at 911 (emphasis added). This Court concluded by stating that "the lands irrigable under the system within the district should be considered as a whole, and such lands must be assessed, for the maintenance and operation of the water system, at the same rate, where the benefits, that is, the water needed and received, are the same." 61 Idaho at 611, 104 P.2d at 911.

In *Niday v. Barker*, 16 Idaho 73, 101 P. 254 (1909), a water user in an irrigation district sued to require the district to deliver water to him. The district contended that there was an enormous amount of seepage and evaporation in the five miles of lateral that delivered water to the water user's farm and that keeping the lateral in sufficient repair to deliver the water would be an enormous cost, greatly exceeding the rental charges paid by the water user. In rejecting that argument, this Court stated:

> This is not a sufficient reason for refusing to deliver the water. *We do not apprehend that rental charges for the use of water from irrigating canals are based upon the actual expenses of carriage and delivery to each individual consumer.* If that were true, the rate charged to the land owner at the upper end of the main canal would be comparatively insignificant, while the rate charged to the man who lives at the extreme end of the canal, fifty or sixty miles from its intake, would be so enormous and exorbitant as to prohibit its use and make agricultural pursuits an impossibility with him.

16 Idaho at 80, 101 P. at 256 (emphasis added).

The above cases show that an irrigation district cannot vary the assessments to the landowners within the district based upon the cost of delivering them water.[4] Conveyance loss is simply a cost of delivering water to the water users in the Irrigation District. Apportioning conveyance loss by river reach would result in some water users paying a higher proportion of that cost than others. The district court did not err in ordering that the conveyance loss be apportioned under the universal shrink method so that all water users receiving the storage water bear their proportionate share of the conveyance loss.

The Plaintiffs contend that the district court erred because "the statutes specify there can be no 'conflict' between [the Department's] jurisdiction to administer by rule and the District's jurisdiction to allocate water amongst its users under Title 43." In support of that argument, the Plaintiffs rely upon Idaho Code § 43-1503, which states:

> None of the provisions of this title [governing irrigation districts] shall be construed as repealing or in anywise modifying the provisions of any other act relating to the subject of irrigation or water distribution. Nothing herein contained shall be deemed to authorize any person or persons to divert the waters of any river, creek, stream, canal or ditch from its channel, to the detriment of any person or persons having any interest in such river, creek, stream, canal or ditch, or the water therein, unless previous compensation be ascertained and paid therefor, under the laws of this state authorizing the taking of private property for public uses.

This statute has nothing to do with the interpretation of Rule 40.03.b. Idaho Code § 43-304 grants the directors of an irrigation district the power "to establish equitable by-laws, rules and regulations for the distribution and use of water among the owners of such land, as may be necessary and just to secure the just and proper distribution of the same." The Plaintiffs have not pointed to any other statute that they contend conflicts with this statute. The district court did not hold that the power granted to the Directors by Idaho Code § 43-304 "repeal[ed] or in anywise modif[ied] the provisions of any other act relating to the subject of irrigation or water distribution."

In their opening brief, the Plaintiffs also "contend the District acted beyond the bounds of that discretion . . . by failing to exercise a reasonable and equitable distribution plan." The

---

[4] In this case, there is no contention that there was an enlargement or extension of the Irrigation District so that there would be more than one class of lands entitled to receive the storage water. *See Bradshaw v. Milner Low Lift Irr. Dist.*, 85 Idaho 528, 381 P.2d 440 (1963).

Plaintiffs do not support this contention with any argument or authority. "We will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument." *Callaghan v. Callaghan*, 142 Idaho 185, 190, 125 P.3d 1061, 1066 (2005).

**C.   Are either the Plaintiffs, the Intervenors, or the Irrigation District and its Directors Entitled to an Award of Attorney Fees on Appeal?**

The Plaintiffs seek an award of attorney fees under Idaho Code § 12-117. Because they have not prevailed on the appeal, they are not entitled to an award of attorney fees under that statute. *Fenwick v. Idaho Dept. of Lands*, 144 Idaho 318, 324, 160 P.3d 757, 763 (2007).

The Intervenors seek an award of attorney fees under Idaho Code § 12-121. Under that statute, attorney fees will be awarded to a prevailing respondent when this Court is left with the abiding belief that the appeal was brought or pursued frivolously, unreasonably or without foundation. *Downey v. Vavold*, 144 Idaho 592, 596, 166 P.3d 382, 386 (2007). We have not before addressed the allocation of conveyance loss among water users in an irrigation district, and therefore decline to award attorney fees under section 12-121.

The District and its Directors seek an award of attorney fees under both sections 12-117 and 12-121. We will award attorney fees on appeal under section 12-117 "if we find that the losing party acted without a reasonable basis in law or in fact." *Marcia T. Turner, L.L.C. v. City of Twin Falls*, 144 Idaho 203, 212, 159 P.3d 840, 849 (2007). We do not find that this appeal is so lacking in merit that attorney fees should be awarded under this statute. With respect to the District's and its Directors' request for attorney fees under section 12-121, that request is denied for the same reason it was denied to the Intervenors under that statute.

### IV.  CONCLUSION

The judgment of the district court is affirmed. We award costs on appeal, but not attorney fees, to the respondents.

Justices BURDICK, J. JONES, W. JONES and HORTON **CONCUR**.

14